Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The North Carolina Industrial Commission has jurisdiction over the subject matter of this case, and parties are properly before the Industrial Commission.
2. At all times pertinent hereto, there was an employee-employer relationship between the plaintiff and the defendant.
3. Defendant is self-insured under the provisions of the North Carolina Workers' Compensation Act.
4. Plaintiff's average weekly wage is $232.40 per week.
5. The date of any alleged injury by accident is 20 May 1992.
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was 53 years old, with a date of birth of 4 July 1940. Plaintiff began working in defendant's laundry on 14 February 1989, and she remained with defendant for about three and a half years. Defendant operated a hospital laundry. The defendant's facility included an overhead rail which carried bags of laundry through defendant's plant. The bags weighed approximately 80 pounds.
2. During the end of 1991, plaintiff's husband was ill; and she cared for him. On New Year's Day 1992, plaintiff's husband died. In May 1992 plaintiff asked her supervisor if she could begin to work part-time because she would receive additional benefits as a result of her husband's death if she earned less money at work.
3. On 20 May 1992 plaintiff claims the following occurred: plaintiff was standing beside the washing machine waiting for a bag of laundry. The rope on a bag of laundry which was on the overhead rail became loose, and the laundry fell out of the bag and struck plaintiff on her head and shoulders. The blow knocked plaintiff into a nearby industrial fan. She did not fall to the floor, but fell against the fan. Afterward, plaintiff was dazed, but was able to finish the work day. Plaintiff has not returned to work since the incident and has continually been unable to engage in any gainful employment since that time.
4. Because of plaintiff's demeanor at the hearing and because of inconsistencies between plaintiff's testimony and the testimony of her supervisors and co-workers, the undersigned finds that the plaintiff's testimony was not credible; and instead of occurring as plaintiff claims, the undersigned finds that the following occurred: before 20 May 1992 plaintiff asked to take 21 May 1992 (Thursday) off as a vacation day for a four-day weekend. On 20 May 1992 (Wednesday) a bag of laundry was being carried on an overhead rail when the rope became loose and the laundry fell out of the bag. Under the bag when the laundry fell, was an industrial fan. The fan stood on a pole; and the height of the combined pole and fan was about seven feet. Plaintiff was standing two feet from the fan. When the laundry fell, it landed on top of the fan, but a few pieces blew onto plaintiff. Plaintiff did not fall over onto the fan, and plaintiff made no complaints to her supervisor or co-workers of any injury to her back at that time. This incident did not cause any injury to plaintiff's back.
5. Plaintiff did not work the next day because of vacation. She went to the emergency room at Forsyth Memorial Hospital on 21 May 1992, and she reported that laundry had fallen on her at work the day before. The doctor diagnosed a cervical strain and prescribed medication.
6. After the four-day weekend, plaintiff returned to work on Monday, (25 May 1992) and worked 11 and a half hours (although plaintiff testified that she had not returned to work since 20 May 1992). Plaintiff worked 14 hours on Tuesday (26 May 1992). She worked six hours and 14 minutes on Wednesday (27 May 1992). She worked nine and a half hours on Thursday (28 May 1992); and she worked 12 and a half hours on Monday (2 June 1992). Plaintiff has not returned to work since 2 June 1992. During the week and a half that plaintiff was back at work, plaintiff did her regular job and made no complaints to her co-workers.
7. Plaintiff went to Dr. Gina Pasquale, her family doctor, on 3 June 1992 (the day after she stopped working). Her primary complaints were grief over her husband's death and high blood pressure. Plaintiff also complained of a cervical strain, and the doctor prescribed physical therapy. Plaintiff went to physical therapy between 5 June 1992 and 22 June 1992.
8. Plaintiff was examined again by Dr. Pasquale on 22 June 1992. Plaintiff reported that she was experiencing numbness and weakness in her right arm which had began on 10 June 1992 (about a week after she had stopped working). Dr. Pasquale excused plaintiff from work and referred plaintiff to a neurosurgeon.
9. The first examination by Dr. Charles Rawlings (neurosurgeon) was on 24 June 1992. The results of his examination were generally within normal limits, but Dr. Rawlings ordered an MRI scan and nerve conduction studies. At the time of these tests, plaintiff had a small disc herniated at spine level C6-7, but there was no nerve impingement. The second (and last) examination by Dr. Rawlings was on 6 July 1992, and Dr. Rawlings recommended physical therapy. Since 6 July 1992 plaintiff has received no medical treatment for her back. Plaintiff testified that she had received no treatment because she could not afford it; however, during this time plaintiff has received treatment at Forsyth Memorial Hospital for breathing problems, and from Reynolds Health Center for mental problems. There is no evidence of record that any physician has ever refused plaintiff's request for medical treatment.
10. There is insufficient evidence of record from which the undersigned can infer from its greater weight that any incident on 20 May 1992 caused an injury to plaintiff's back. This finding is based on the following:
 a. The length of time between the alleged accident and the onset of symptoms (usually 72 hours, but in this case plaintiff was able to work for one and a half weeks, and did not experience numbness and tingling until three weeks after the alleged accident).
 b. The alleged accident is substantially less traumatic than plaintiff has represented; and
 c. Any opinions of Dr. Rawlings are based on an inaccurate medical history; therefore, the undersigned finds limited weight in the opinions.
11. Any inability of plaintiff to be employed after 20 May 1992 was not caused by the incident of 20 May 1992.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSION OF LAW
On 20 May 1992 plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer, in that plaintiff did not injure her back as a result of a specific traumatic incident of her assigned work duties. N.C.G.S. § 97-2 (6).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay their own costs, except that defendants shall pay an expert witness fee in the amount of $200.00 to Dr. Rawlings.
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________________ JAMES J. BOOKER COMMISSIONER
S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CMV/CNP/tmd 12/30/94